Louis Cohn, for appellant.

Julius Blumofe, for respondent.

McLAUGHLIN, J. This appeal is from an order denying a motion to stay proceedings in the action until the costs in a prior action brought upon the same cause of action were paid. The plaintiff, on the 14th of April, 1905, brought an action in the County Court of Kings county. Issue was joined therein, and the action thereafter came on for trial, which resulted in a dismissal of the complaint, with $107.33 costs and disbursements. Copy of the judgment, with notice of entry, was duly served upon plaintiff's attorney. No appeal was taken from the judgment. Subsequently the plaintiff brought this action in the Supreme Court, the venue being laid in the county of New York, to recover upon the same cause of action. A motion was thereupon made to stay the prosecution of this action until the costs of the former action were paid. The motion was denied, and the defendant appeals.

The fact is uncontradicted that this action is brought to recover upon the same cause of action upon which a recovery was sought in the former action, in which the plaintiff was unsuccessful, and in which costs were awarded to the defendant, and that such costs have not been paid. It has many times been held that where a plaintiff is unsuccessful in an action, and costs are therein awarded to the defendant, another action to recover upon the same cause of action cannot be maintained until the costs are paid. Ingrosso v. Baltimore & Ohio R. R. Co., 105 App. Div. 494, 94 N. Y. Supp. 177; Wilner v. Independent Order Ahawas Israel (decided at the November term, and not yet officially reported) 107 N. Y. Supp. 497; Bigelow v. Drummond, 109 App. Div. 132, 95 N. Y. Supp. 1027; Muratore v. Pirkl, 109 App. Div. 146, 95 N. Y. Supp. 855.

The order appealed from, therefore, must be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.

---

SMETANKA v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. RAILROADS—OPERATION—INJURIES TO LICENSEES—CARE AS TO LICENSEES.

Defendant's railroad tracks ran at the foot of a cliff, and a number of people living on the face of the cliff made a practice of crossing the tracks midway between two highways about 600 feet apart, at which there were flagmen. A fence on the side of the tracks opposite the cliff had become dilapidated, and had been rebuilt with openings at intervals to permit persons to pass through. *Held*, that those living on the cliff were merely licensees to cross the tracks, and did not constitute the crossing such a public thoroughfare as to require defendant to sound a warning at that point.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1228–1237, 1261.]

2. SAME—CONTRIBUTORY NEGLIGENCE OF PERSONS INJURED.

In an action against a railroad company for death of plaintiff's intestate, a finding that decedent was not guilty of contributory negligence *held* against the weight of evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1360.]

Appeal from Trial Term, New York County.

Action by George Smetanka, administrator, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff and an order denying motion to set it aside, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Robert A. Kutschbock, for appellant.
Ira B. Wheeler, for respondent.

HOUGHTON, J. Plaintiff's intestate was killed by a train while he was attempting to cross the defendant's track on foot. The accident did not occur at a highway crossing, but midway between two highway crossings, about 600 feet apart, at each of which defendant maintained a flagman. The defendant's two-track railroad runs northerly and southerly at this point, and on the easterly side between these highways is a high cliff, scattered on the face of which are 10 houses, the inhabitants of which, instead of going to either highway, have been in the habit of climbing down the cliff and crossing the tracks at places between the streets. On the west of the tracks there is a highway, and between them and the highway defendant has maintained a fence. Some five or six years ago the fence, being dilapidated, was rebuilt, and an opening between posts in three places was left, through which foot passengers might pass by stepping over the lower board. The record does not disclose whether these openings were left by defendant's carpenters when the fence was built or made shortly thereafter, but they have existed since the new fence was erected. Plaintiff lived on the cliff, and the deceased boarded with him, and both worked in a foundry which was west of defendant's railroad tracks and up the parallel highway. The accident happened about 5 o'clock in the afternoon on the 29th of March, and hence in daylight. Plaintiff and the deceased were coming from work at the foundry, and passed the first highway and came to the middle opening in the fence, and plaintiff testifies that the deceased, who was just ahead of him, looked both ways before stepping through the opening, and waited for a train to pass on the near track, and then crossed that track, and was hit by one coming from an opposite direction and killed. The train which first passed left steam and smoke which enveloped the deceased, and this is given as an excuse why he did not observe the train which hit him, and which except for the smoke could have been seen as it approached from 400 to 600 feet. The theory of the plaintiff upon the trial which resulted in a verdict in his favor was that the defendant had permitted pedestrians to cross the tracks at this place for so long a time that it amounted to a license and permission so to do; and hence that a duty was imposed upon defendant in respect to such persons to exercise care in the movement of its trains at that point, and that the deceased was shown to have used due care because he looked and listened and waited for one train to pass before attempting to cross. The plaintiff predicates defendant's negligence upon proof that no whistle was sounded or bell rung.

We are of the opinion that the crossing was not such a one as made it the duty of the defendant to give any warning of the approach of trains. The crossing place was used only by those persons who dwelt upon the cliff, which was difficult of ascent, and necessarily could not be used as a general route of travel. It was not, therefore, a public thoroughfare for a considerable number of people, but only a way used for convenience by the comparatively few persons living upon the cliff. There was a street on each side of them, and no house was more than 300 feet from one or the other of the streets, and access could be had in going around at a proper crossing by walking a slightly greater distance and taking a few moments more of time. The case is not governed by the decisions of Barry v. N. Y. C. &. H. R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377, and Byrne v. Same, 104 N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512, and De Boer v. Brooklyn Wharf Co., 51 App. Div. 289, 64 N. Y. Supp. 925, in each of which cases there was dispute either as to whether the crossing was a public highway, or whether it had been used by the general public for a long period of time. Nor is it controlled by the peculiar features existing in Swift v. Staten Island Rapid Transit R. R. Co., 125 N. Y. 645, 25 N. E. 378, if, indeed, the rule laid down in that case can still be deemed to be the law in view of the recent decision of the Court of Appeals in Keller v. Erie R. R. Co., 183 N. Y. 67, 75 N. E. 965. The rule enunciated in Sutton v. N. Y. C. & H. R. R. Co., 66 N. Y. 243, is more applicable to the situation disclosed. In that case it was held that, although a railroad company by permitting people repeatedly to cross its tracks at a point where there is no public right of passage has given an implied license so to do, it owes no duty of active vigilance to those crossing to guard them from accident. It is manifest that this rule is the only practical and reasonable one to apply to the great track line railroads at least, where scores of trains are operated daily and necessarily at a high rate of speed.

It is ·true that the defendant either made or permitted to exist the openings in the fence, but its reasonable answer to this is that from experience the fence would be torn down by the few people who desired to cross, and hence it was better to leave openings. Even this act of the defendant did not make the footpath a public crossing, and impose upon it the active duty of being on the lookout for pedestrians, such as exists respecting a public highway. There is no claim that the defendant wantonly injured the deceased, or failed to do what it ought when its engineer observed his peril. Nor was the train going at a reckless rate of speed, for it had only got under way after stopping at the Spuyten Duyvil Station. But, if it be said that there was some duty of care which the defendant omitted, still we think the deceased was not shown free from contributory negligence. Smoke and steam had settled down upon him after the first train passed. Notwithstanding this obstruction to his vision, he proceeded to cross the tracks. Under such condition, it was his duty to wait until the smoke had disappeared. Heaney v. L. I. R. R. Co., 112 N. Y. 122, 19 N. E. 422; Keller v. Erie R. R. Co., 183 N. Y. 67, 75 N. E. 965. It is no answer to say that he was only 16 years of age, and unfamiliar with the operation of railroads. He had been living with the plaintiff for two

weeks and had crossed and recrossed the tracks, and must have observed that trains passed and repassed frequently. Had he waited until the smoke cleared, he could have seen the approaching train for several hundred feet. That he did not wait until the smoke cleared is conclusively established by the testimony of plaintiff's witnesses, who observed him from the cliff as he came through the opening in the fence. They saw him then, but, by reason of the smoke, could not see him as he proceeded to cross. Notwithstanding his age and inexperience, it is shown that he did appreciate the danger from passing trains, because it was proved that he looked both ways when he came to the fence, and waited for the first train to pass. Even if it be said that under the circumstances the decedent was not guilty of contributory negligence as matter of law, still the finding of the jury that he was free from negligence is against the weight of evidence, and cannot be upheld.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.