## OBENLAND v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.  June 29, 1908.)

1. STREET RAILROADS—PRIVATE RIGHT OF WAY—PREMISES—RIGHT TO OCCUPY—
      PERSONS NEAR TRACK—INJURY.
      Defendant operated its street cars and trains over a space known as
   "Railroad Avenue," which, while not a street, was used as such with
   defendant's knowledge.  A platform had been built, partly by defendant
   and partly by plaintiff's employer, between defendant's tracks and a
   brewery, on which plaintiff was accustomed to unload beer barrels, which
   he was doing at the time of the accident, having first driven his team ad-
   jacent to the platform and turned the horse and wagon, as he believed,
   into a place of safety.  Plaintiff was injured by one of defendant's
   trains being backed along an adjoining track, by the step of one of the
   cars striking the hub of one of the wheels of plaintiff's truck and shoving
   it over on him.  Held, that plaintiff, in using the space, was not a mere
   licensee, but a person rightfully there, and to whom defendant owed the
   duty of ordinary care.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads,
   § 195.]

2. SAME—NEGLIGENCE.
      Where defendant's motorman, while changing a train from one track
   to another, operated the same backwards over a part of defendant's right
   of way, which defendant knew was used as a public street, and in so
   doing ran against plaintiff's truck and injured plaintiff, and if the
   motorman had been in the front car he would probably have seen the
   dangerous proximity of plaintiff's wagon to the track, such facts justi-
   fied an inference that the motorman was negligent.

3. SAME—CONTRIBUTORY NEGLIGENCE—ERROR IN JUDGMENT.
      Plaintiff drove his horse and wagon into a space between a platform
   and a street railway track to unload, and cramped his wagon so that,
   as he supposed, the horse and wagon were in a place of safety.  He
   made no further observations for 10 minutes before the wagon was struck
   by an approaching car and pushed against plaintiff, causing his injury.
   Held, that plaintiff's mistake in judgment, if any, or the fact that a slight
   movement of the horse brought the wheel too near the track for safety,
   did not establish plaintiff's contributory negligence as a matter of law.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads,
   §§ 251–257.]

      Woodward and Gaynor, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Charles Obenland against the Brooklyn Heights Railroad Company. From a judgment dismissing plaintiff's complaint at the close of his evidence, he appeals. Reversed.

Argued before WOODWARD, JENKS, RICH, MILLER, and GAYNOR, JJ.

Henry Hirschberg, for appellant.

D. A. Marsh, for respondent.

MILLER, J. I think that the principle involved in Barry v. N. Y. C. & H. R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377, and in Byrne v. N. Y. C. & H. R. R. Co., 104 N. Y. 362, 10 N. E. 539, 55 Am. Rep. 512, is applicable to this case, and that the case of Keller v. Erie R. R. Co., 183 N. Y. 67, 75 N. E. 965, is not in any respect analogous. The Barry and Byrne Cases, supra, involved accidents at crossings of a steam railroad which the defendant had for many years suffered the public to use. In the case at bar we must assume (the plaintiff was nonsuited) that the accident occurred at a place which was used as a public street to the knowledge of the defendant. The place was known as "Railroad Avenue," and, while the plaintiff's counsel was showing by a witness that the place was used as a thoroughfare, the court interrupted the examination with the statement, "Your client was clearly there by consent." A platform had been built, partly by the defendant and partly by the plaintiff's employer, between the defendant's tracks and the brewery, and the plaintiff's employer had paid the defendant rent for the use of a part of said platform, and I think the evidence warrants the conclusion that he was paying rent for some part thereof at the time of the accident. The plaintiff had been accustomed to use this platform, as he was using it at the time of the accident, for 3 years, and the plaintiff's employer had been in the habit of using it for 13 years. The plaintiff, then, was more than a mere licensee casually upon the defendant's premises. He was rightfully, with the knowledge and consent of the defendant, in a place which in appearance and use was a public street, and where the defendant knew that he or others were likely to be.

There was evidence from which a jury might find that the defendant was negligent. The defendant's motorman was in the motor box on the rear car of a five-car train, where he could not see objects with which his train might collide. The situation is not the same as though the train was being backed up in the defendant's railroad yard. I think, as between the plaintiff and the defendant, Railroad avenue should be regarded as a public street, and the defendant, knowing that people were liable to be upon its tracks, was under a duty to manage its trains with reference to that knowledge. It may be inferred that the motorman would have seen the dangerous proximity of the plaintiff's wagon to the track, had he been in the front car, because a man in the front car perceived the danger of a collision and unsuccessfully attempted to warn the motorman. The defendant could not assume that people using Railroad avenue would at all times be out of the way of its trains. It was necessary for the plaintiff and his coservants to drive upon the tracks in order to back the wagons around to be unloaded. The defendant knew this, and, of course,

knew that a train might suddenly come upon one of the men before he could get his horse and wagon off the track. I do not think the defendant could run its trains through Railroad avenue without any regard whatever to the knowledge which it had of the use of Railroad avenue by the public, and particularly by the plaintiff's employer.

It cannot be said as a matter of law that the plaintiff was guilty of contributory negligence. He had cramped his wagon, so that, as he supposed, the horse and wagon were in a position of safety. The fact that he did not make further observation during the 10 minutes before the accident does not warrant a holding that he was negligent as matter of law. Either the plaintiff was mistaken in judgment, or by a slight movement of the horse the wheel had been turned too near the track for safety; but a mistake in judgment is not negligence, and I do not think that one can be said to be negligent as matter of law for continuing work in a place which, after making observation, he supposed to be safe. It seems to me that on this branch of the case the evidence is much more favorable to the plaintiff than was the evidence in the case of Black v. Staten Island Electric Railroad Co., 40 App. Div. 238, 57 N. Y. Supp. 1112. In that case the plaintiff supposed that his wagon was in a position of safety, but did not look to see; but it was held that the question of his negligence was for the jury. This is not like the case of Volosko v. Interurban St. Ry. Co., 190 N. Y. 206, 82 N. E. 1090. In that case the plaintiff was working where he knew he would be hit by an approaching car, and made no observation whatever to discover the approach of the car.

We think there was sufficient evidence on both questions to take the case to the jury, and that it was error to nonsuit.

Judgment reversed, and new trial granted; costs to abide the event.

JENKS and RICH, JJ., concur.

WOODWARD, J. (dissenting). The facts which may be deemed to have been established by the plaintiff's evidence, so far as they are material to the decision in this case, are as follows: The plaintiff was employed by one Kent at Coney Island in drawing beer barrels, loaded and empty. He made use of one horse and a light beer wagon for this purpose. "Kent's Brewery," as it is known, is located on West Twelfth street, Coney Island. Railroad avenue crosses West Twelfth street at this point, and along the Railroad avenue side of the brewery is a platform used for handling the Kent brewery barrels, etc. Railroad avenue is not a public highway. It is the defendant's private right of way. Between the platform and the defendant's tracks is a space about 12 feet wide on West Twelfth street, running back along Railroad avenue for about 50 feet, where the space is reduced to about 9 feet. The plaintiff, on the day of the accident, had backed his wagon down into this space, as had been his custom for two or three years, for the purpose of unloading empty beer barrels. His wagon was backed into the narrowest part of the space, the horse facing toward West Twelfth street, and the plaintiff testified that he supposed he had left sufficient space between his wagon and the tracks for the passage of defendant's trains, with the operation of which he was entirely familiar. He says that

on this day he located his wagon, got down behind the same, and was engaged in unloading the barrels upon the platform; that he had been thus engaged for a period of about 10 minutes, without making any effort to ascertain whether the defendant's trains were in sight; and that the first he knew of the presence of the train was when the forward wheel of his wagon was struck and the wagon was crowded over upon him, causing his injuries. It appears that the defendant operates its cars from New York to Luna Park in groups or trains, the motorman operating them from a motor box in the front of the forward car; that the train causing the injury had come down from New York, had discharged its passengers at Luna Park, and then. ran down past the brewery on the track next to the open space occupied by the plaintiff for the purpose of passing over a connecting switch to the track used in returning to New York, and in passing the plaintiff's wagon the step of the forward car, which projected over the tracks about 2 feet, hit the hub of the wagon, causing the injury.

The negligence complained of is that the motorman, instead of remaining in the forward car of the train and operating the same over this switch from the front, took his position in the rear car and backed the train down over the switch, that he might be in the head of the train when it came out on the main track. The evidence shows that there was a man on the front car, who gave warning of the threatened collision, which the motorman either did not hear or disregarded; and it is argued that the defendant was guilty of neglect in thus operating its train. It is to be remembered, however, that the defendant, at the time, was not operating a passenger train in a public highway. It was upon its own right of way, practically in its own railroad yard making up its train for the return trip, and it had no reason to anticipate that any one upon the premises as a mere licensee would so far disregard its rights as to get in the way of the regular operation of cars. It is true that the plaintiff had long used this open space for the purpose of unloading barrels; but it is equally true that he had, during all of the time, kept his horse and wagon a sufficient distance from the tracks to obviate the danger of collision, and there was concededly room enough for doing this on the occasion of the accident. The plaintiff says he thought he had done so, and it is evident, from the fact that only the projecting step collided with the projecting hub of the wagon, that the wagon was far enough away so that only an accurate and close observation would have discovered to the motorman that there was danger. Was it, in view of the circumstances, negligent on the part of the defendant, as against this plaintiff, to back its cars over a private right of way for a short distance? We hardly think so. The case would seem to be one where the duty of the defendant was merely to avoid wantonly injuring the plaintiff, for there was a clear right on the part of the defendant to assume that its right of way would not be obstructed, without being given some notice, at least, of such obstruction. Keller v. Erie R. R. Co., 183 N. Y. 67, 72, 73, 75 N. E. 965, and authorities there cited.

But, if this were fairly open to doubt, we do not think the plaintiff has affirmatively shown that he was free from negligence contributing

to the accident. He knew perfectly well the method of operating the defendant's trains. He knew that the space was only three or four feet wider than his wagon, that the cars projected over the tracks for a considerable distance, and that the hubs of his wagon reached out beyond the general outlines of the same; and yet he tells us that after looking to see if there was a train in sight he got down behind the wagon, out of sight of the tracks from the direction in which a train would come, and for a period of 10 minutes made no effort to discover whether he was in danger or not, and that the first he knew of the danger was when the wagon was struck and turned over on him. He certainly had as much of a duty to be looking out for regular trains and the regular mode of operation, while in that position, as the motorman had to be looking out for the presence of a truckman, who might or might not be there at any given time, and, having placed his wagon where it was not obviously encroaching upon the passageway of trains, it was hardly meeting the requirement of showing reasonable care for him to get behind the wagon, out of sight, and for a period of 10 minutes to rely wholly upon the motorman to so operate his train as not only not to hit the wagon, but not to injure him. There was nothing to indicate to the motorman that any individual was in danger, even though he might have seen the wagon. So far as the situation would have presented itself to the motorman, had he been on the front car, there would have been a horse and wagon fronting him, with the wagon itself far enough away to avoid a collision, with no great danger to be apprehended from a bumping of the car step with the hub of the wheel, if the space was not in fact sufficient to permit it to pass, for there was no one in sight; and yet we are asked to hold that the plaintiff's evidence was sufficient to warrant a jury in holding that he had been free from negligence contributing to the accident. We are of opinion that the evidence did not reach this point, and that the trial court was justified in granting a nonsuit.

The judgment appealed from should be affirmed.

GAYNOR, J., concurs with WOODWARD, J.