dict against the appellant. The trial justice charged the jury as follows:

"Now, as to the defendant Drew, if you determine, gentlemen of the jury, that the defendant Drew did nothing more or less than simply furnish information to the police authorities, upon which they acted, and that, although there was mistake in such information, the information was furnished in good faith, and simply for the purpose of aiding the police in apprehending the party mentioned in the Governor's warrant, then your verdict ought to be for the defendant Drew."

This was not only an accurate statement of the law (Brown v. Chadsey, 39 Barb. 253; Farnam v. Feeley, 56 N. Y. 451; Teal v. Fissel [C. C.] 28 Fed. 351; 19 Cyc. p. 329), but it constituted the law of the case for the jury, which it was their duty to follow. If they followed it, they should have found in favor of the appellant; for there is not a particle of evidence that he did anything more than to communicate to the police, in good faith, information which he believed. That he was desirous that Stephen Davern should be apprehended we do not doubt, and no blame can properly attach to him for entertaining such a desire, but there is nothing to suggest even a suspicion that he was actuated by any motive hostile to plaintiff.

The verdict, we are all agreed, was too large in any view of the case. It was enhanced, no doubt, by the erroneous charge that plaintiff might be held liable, if liable at all, for everything that was done by the police or the city magistrate after the arrest, including the erroneous arraignment of plaintiff before a city magistrate, instead of a justice of the Supreme Court, or a judge of the Court of General Sessions. With these matters appellant had nothing to do, and was not chargeable with damages by reason of them. Gearity v. Strasbourger, 133 App. Div. 701, 118 N. Y. Supp. 257; Whitney v. Hanse, 36 App. Div. 420, 55 N. Y. Supp. 375; Newman. v. R. R. Co., 54 Hun, 335, 7 N. Y. Supp. 560; Locke v. Ashton, 18 L. R. (N. S.) Q. B. Div. 18.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., concurs.

---

(78 Misc. Rep. 659.)

### ALLENZA v. ERIE R. CO.

(Supreme Court, Trial Term, Livingston County. December 31, 1912.)

1. CARRIERS (§ 282*)—CARE REQUIRED—PERSON APPROACHING DEPOT BY USUAL COURSE—"TRESPASSER."

One who, intending to become a passenger, takes a diagonal course from a street to a depot across a switch track, a way which for years, to the knowledge of the company's local station agents, without objection or protest, had been used by passengers, is not a trespasser, but is impliedly invited to take that course, so that the company owes to her the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

duty of reasonable care in the operation of its cars there, and not merely of not wantonly running her down.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1103, 1107, 1108, 1115, 1116; Dec. Dig. § 282.*

For other definitions, see Words and Phrases, vol. 8, p. 7094.]

2. CARRIERS (§ 320*)—INJURY TO PERSON CROSSING TRACK TO BECOME PASSENGER—NEGLIGENCE—EVIDENCE.

Whether, under the evidence, a railroad company, in kicking a car along a switch track, killing one who was going across it, by a route she was impliedly invited to take to the depot to become a passenger, was guilty of negligence, *held* a question for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

3. CARRIERS (§ 347*)—INJURY TO PERSON CROSSING SWITCH TRACK TO BECOME PASSENGER—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Whether, under the evidence, one who in going across a switch track, by a route she was impliedly invited to take, to the depot to become a passenger, was killed by a car kicked along such track, was guilty of contributory negligence, *held* a question for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

Action by Frank Allenza, administrator of Fillippa Allenza, deceased, against the Erie Railroad Company. After verdict for plaintiff, defendant moves for new trial on the minutes. Motion denied.

McInerney & Bechtold, of Rochester, for plaintiff.

Robbins, Brown & Greene, of Hornell (Jesse S. Phillips, of Hornell, of counsel), for defendant.

CLARK, J. On the 14th day of November, 1910, plaintiff's intestate started for defendant's station at Livonia, intending to take the next train for Avon. She proceeded westerly on the south side of Main street in Livonia until she got to the northwest corner of a brick building standing just east of defendant's lands, when she turned southerly and proceeded down a cement sidewalk on the west side of this brick block some 40 feet to the end of the walk, and then started diagonally across an open space belonging to defendant, towards its station, and while crossing a switch, which ran nearly parallel to this sidewalk referred to, and some 7 feet west of it, she was hit and killed by one of defendant's freight cars, which had been "kicked" into this switch from the main track at the northerly end of the switch, and was proceeding by its own momentum southerly on the switch to a point where it was to be loaded with produce.

Defendant's main track at Livonia passes through the village in a practically north and south direction; the main entrance to the station facing west, it being on the east side of the main track, and the switch where this lady was killed running on the east side of the station building. As plaintiff's intestate proceeded westerly on the south side of Main street, toward the station, when she came to the corner of the brick block above referred to, she could have proceeded straight on westerly on the south side of Main street, until she came to de-

fendant's main track, and then turned sharply to the left and proceeded southerly parallel to the main track on a cinder path to the station; but that course would have been considerably longer than the one she adopted.

[1] There was ample evidence from which the jury could have found that the course followed by deceased was the course openly adopted by a very large proportion of defendant's patrons at Livonia in going between Main street and its station, and that this custom of intending passengers, or passengers leaving trains at the station, to pass between Main street and the station over the route adopted by deceased, had been open and notorious for many years, and with the full knowledge of defendant's local station agents, and passengers had taken that course without any objection or protest from defendant or its agents or servants. Under the circumstances, this lady being an intending passenger, who had a lawful right to go to the station of defendant, when she followed the course to reach the station that she had taken on former occasions, and which was the usual course adopted by passengers for many years going to and from the station from Main street, with the full knowledge of defendant's agents that this space was being so used by its patrons, without its raising a protest or objection, she was not a trespasser; but the long, open and notorious user of this course by the traveling public, with defendant's full knowledge and acquiescence, created a situation where it might be implied that defendant had practically invited its passengers to take that course. Under the circumstances, it owed a greater duty to its intending passengers taking that course than the mere duty not to wantonly run them down; but it owed the duty of reasonable care in the operation of its cars at that point.

The case of Keller v. Erie Railroad Company, 183 N. Y. 67, 75 N. E. 965, relied on by defendant, is hardly controlling here, for the reason that in that case plaintiff was not an intending passenger of defendant, but was merely walking along the tracks of another railroad, as was a common custom, and was hit by one of defendant's trains at the intersection of the two roads. He had no business with the defendant, and did not intend to have any, and, of course, when he traveled on defendant's property, he was a trespasser and took his chances. But in the case at bar deceased, being an intending passenger, and following a course which she had taken before to reach its station, a course which was commonly used by very many of its patrons at Livonia, and with the knowledge of its officials, rendered her relations to the company somewhat different from those of plaintiff's intestate in the Keller Case, and I think the cases of Barry v. New York Central R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377, Byrne v. New York Central R. R. Co., 104 N. Y. 363, 10 N. E. 539, 58 Am. Rep. 512, and De Boer v. Brooklyn Wharf Co., 51 App. Div. 289, 64 N. Y. Supp. 925, are more in line with the facts in this case.

Of course, defendant had a right to use this switch for its business, and it was not unlawful for it to "kick" this freight car in on the switch, if such work was properly done; but when the public was permitted to use its premises for many years, where deceased undertook

to cross to its station, and in an open and notorious manner, without protest, and with knowledge that it was being so used, it was bound to exercise at least reasonable care in the management of its trains and cars at that point, so that intending passengers, about to proceed over this commonly used territory to reach its station, would not be subjected to unnecessary risks and dangers, and whether such reasonable care was exercised at this time was clearly for the jury.

[2] It is strongly urged in behalf of defendant that, even though plaintiff's intestate was not a trespasser, there was not sufficient proof of defendant's negligence to warrant submitting that question to the jury. There was evidence to the effect that the car which killed this lady had been placed on this switch at its intersection with the main track at a point several hundred feet north of Main street, and that it was being "kicked" into this switch, which means that the locomotive pushing this car had attained considerable speed, and then had been disconnected, leaving the car to proceed at its own momentum in a southerly direction on this east switch; that no person had been placed at the southerly end of this car, and in a position where such person could see people about to cross the switch, to warn them of approaching danger; that the car was proceeding rapidly, one witness putting it as high as 16 miles an hour; and that no bell or whistle or warning of any kind was given. Under the circumstances, this car being "kicked" on this switch in a village, and before it would reach its destination having to pass across the main street of the village, and in a territory where defendant, through its local agents, knew perfectly well that intending passengers were likely to travel in going to its station, as had been the custom for many years, it was clearly for the jury to say whether or not, under the circumstances, the defendant exercised reasonable care in the operation of its car.

[3] It is also contended with much earnestness that plaintiff's intestate was not shown to be free from contributory negligence, and that seems to me to be the most troublesome question in the case. There was evidence of one witness to the effect that when intestate reached the northwest corner of the brick block above referred to, as she proceeded on the southerly side of Main street, which point is only a few feet from the switch in question, she turned her head toward the north, which would bring her line of vision in the direction from which this car subsequently came, that she then turned sharply and proceeded southerly on the cement sidewalk, which stands on defendant's land just west of the brick buildings which face defendant's property on the west and about 7 feet east of the switch in question, and that she proceeded southerly to the end of this walk, a distance of some 40-odd feet. Another witness, a daughter of intestate, who had started for the station over the same course, but a little behind her mother, arriving at the northwest corner of the brick block on the south side of Main street just as her mother had reached the southerly end of this sidewalk and before she stepped off the walk to proceed across this little open space to the station, testified that she saw her mother at that point, and saw her turn her head toward the north, and that then she started across toward the depot. She had only gone

from 7 to 10 feet before she reached the switch where she was run down by this car.

I am not unmindful of the rule that, when persons look for the approach of a train, they must look intelligently, and that if a party looked when a train was in sight, and testified that he looked, but did not see the train, such a statement would be incredible as a matter of law; but it must be borne in mind that in this case the lady was killed, and is not here to tell precisely what she did in the matter of exercising care for her own safety, and under these circumstances the rule is somewhat relaxed with reference to establishing freedom from contributory negligence, and not as much proof, or as strong proof, is required to establish that proposition as would be necessary if the party was living to tell her own story. This lady was an intending passenger, and was proceeding toward defendant's station over a course commonly used by its patrons, and with its full knowledge, and without its protest, and she should not be held to the same strict exercise of care that would be required of a person casually going that way, but without any lawful errand at the station. Terry v. Jewett, 78 N. Y. 338; Cranch v. Brooklyn Heights, 186 N. Y. 310, 78 N. E. 1078.

All this lady was obliged to do was to exercise that degree of care for her own safety which would be exercised by a reasonably prudent person under similar circumstances. If she looked to the north, as the witness Densmore says she did, when she left Main street at the corner of the brick block, and proceeded southerly up the cement sidewalk west of the building and just east of the switch, and if when she arrived at the southerly end of this sidewalk, before she started across the little open space to reach the station, she again turned and looked to the north, as her daughter testified she did, who can say that she failed to exercise reasonable care under the circumstances? It should be remembered that the car approaching on this switch from the north was not being driven by a locomotive, where it would be expected that the noise would be loud and steam or smoke would be escaping, which could be plainly seen; but it was proceeding up the switch in a southerly direction by its own momentum, with no person on the front end of the car to warn people who might be about to cross the track, and it might well be that if this lady looked, as these witnesses testified, even though she was able to see this car, which must have been a considerable distance north of Main street when she looked, she would be unable to tell whether or not the car was in motion, for any person who has ever observed a box car on a siding with no locomotive attached will understand that, unless the car is very near, it is difficult to tell whether or not it is in motion, when a person looks at it from a point on or very near the track on which the car is located. A box car that is being "kicked" on a switch in the manner described by the witnesses in this case proceeds along very stealthily, and it might well be that a person at a distance of from 100 to 200 feet from such a car would be unable by any ordinary observation to discover whether the car was in motion, and I think under the circumstances that it was for the jury to say whether this lady looked as she was about to cross the switch, and whether or not, from the position and appearance of

the car, in the absence of any signal, she would be able to tell whether the car was standing still, or was going from her, or coming toward her.

It impresses me that the questions of defendant's negligence and intestate's freedom from negligence were for the jury, and that the findings on those questions were not against the weight of evidence, even though defendant may have had the larger number of witnesses.

The motion for a new trial must be denied, with costs. Ordered accordingly.