MARIA HUNTINGTON, Plaintiff, *v.* UNION RAILWAY COMPANY OF NEW YORK CITY, Defendant.

City Court of New York, Bronx County, May 3, 1932.

*Marshall McLean*, for the plaintiff.

*John J. O'Connell*, for the defendant.

DONNELLY, J. The theory upon which the plaintiff bases her action against this defendant is, that while she was waiting on one of the two platforms of the West Farms trolley station at East Tremont avenue, used by passengers of this defendant and of another street railroad company, intending to become a passenger on one of the defendant's cars starting at that point and continuing east on Tremont avenue, the car she purposed to board stopped nearby to discharge and take on passengers, and that the defendant's starter directed her to said car; that, as she was crossing from where she had been waiting on the platform towards the point where the car she wanted to enter stood with its doors open on the side facing her, she was struck by a trolley car owned and operated by a street railroad corporation other than this defendant, and that the accident was due to the negligence of this defendant's starter, in that, when he invited her to proceed across *this defendant's way*, she had the right to assume such way was safe to a person using a proper degree of care and caution for his own protection.

The cases cited by plaintiff's counsel have no application to the situation at bar. Those cases, with one exception affecting an electric railroad operating on the company's private right of way, involved steam railroads, and, in each of those instances, the space used by the passenger or prospective passenger was unquestionably the defendant's way. In *Terry* v. *Jewett* (78 N. Y. 338), upon which plaintiff's counsel so strongly relies, there was a station for the company's passengers, and a space some distance between the station and the point at which stood the train the passenger intended to board. This space was occupied in part by the company's railroad tracks, and as the passenger was attempting to reach his train, he was struck by one of the company's freight trains. There is no question, upon the facts there disclosed, that there was an invitation to the passenger to use the defendant's way to its train, at its station upon its property, and that the passenger had the right to rely upon the assurance implied in the invitation. In *Walsh* v. *N. Y. C. & H. R. R. R. Co.* (204 N. Y. 58) the plaintiff was injured on the tracks of the defendant by a car belonging to the Erie Railroad Company. There were seven of those tracks and all were the property of the defendant. By an arrangement between the two corporations, the Erie Rail-

road Company used the seventh or most southerly track for the transfer of cars. To the north of all these tracks was the station of the defendant, and several hundred feet south of the tracks and running parallel therewith there was a street known as North avenue. From this street, *over a rough piece of land belonging to the defendant,* there were two well-defined paths which led to and across the tracks of the defendant and to its station. *It was over the defendant's land* that its patrons traveled in going to and from its station, and it was while on this land and as he was proceeding towards one of the two paths thereon, that the plaintiff was injured. The plaintiff settled the action instituted by him against the Erie Railroad Company. The main question decided in that case was, as to whether or not the release given by the plaintiff to the Erie Railroad Company in settlement of its action against it, operated to discharge the New York Central and Hudson River Railroad Company.

In *Allenza* v. *Erie R. R. Co.* (78 Misc. 659) the plaintiff's intestate, as she started diagonally to cross *an open space belonging to defendant,* toward its station and while crossing a switch, was hit by one of the defendant's freight trains which had been " kicked " into this switch from the main track at the southerly end of the switch. Plaintiff's counsel stresses the fact that in this case the route adopted by the deceased had been open and notorious for many years, and that, with the knowledge of its local station agents, passengers had taken that course without any objection or protest from defendant, its agents or servants. In the instant case the route over which this plaintiff traveled to reach the defendant's car was a matter over which the defendant had no option and as to which the defendant made no selection or over which it exercised no control. The route was a public highway open to everybody.

In *Brott* v. *Auburn & Syracuse El. R. R. Co.* (220 N. Y. 92) the plaintiff's testatrix was killed by one of the defendant's cars as she was proceeding from a building maintained by the defendant as a shelter for its passengers and as she stepped from one of the defendant's tracks.

At bar, the space in question was not the defendant's way. It was a public highway. It was not and it could not, it being a public highway, be under the exclusive control of this defendant. Part of it was occupied by the tracks upon which were operated the trolley cars of the New York City Interborough Railroad Company, one of which struck the plaintiff.

Assuming that this defendant's operations at the point in question required it to keep someone there to provide a reasonably safe approach to its cars across the tracks on a public highway

used by another street railroad company, there was no evidence by the plaintiff of an assurance conveyed to her by this defendant. The utmost that can be said of this testimony is, that the man in the blue uniform, found by the jury to have been the defendant's starter, simply indicated to her the car she was seeking. This is evident from plaintiff's own testimony and from the testimony of the only other witness called by her as to the happening of the accident. Plaintiff testified: " Q. Tell the Court and jury what this man said? A. He said, this car going to Tremont Avenue. * * * I turned to my friend, and said, did he say Tremont Avenue, and she said, I didn't notice, I think so, so I called to him and I said, is that car going to Westchester Square? He said, yes. I stepped off the platform. As I did, he put his hand like this (indicating). *I didn't know what he meant*, because everybody was running across that track. There must have been forty or fifty people also taking that same car, because we had to wait quite a while for it, and so we hurried to cross the track, my friend and I. * * *."

At the trial, plaintiff's counsel contended that when his client testified, " he put his hand like this," she indicated a gesture by the starter to come in his direction, while it was urged by his opponent that the motion described was a warning to the plaintiff to stay where she was. Plaintiff's testimony is that she did not know what the starter meant. There is only one inference from her testimony, and that is, that she did not stop to inquire, but joined the throng in the run across the tracks.

The only other witness called by the plaintiff as to the happening of the accident was her friend, Miss Gulvin, who testified: "* * * A man in blue said something to the effect that that car was going back to Eastern Boulevard. I didn't see him, Miss Huntington asked him, *and he motioned, yes.* I was standing on her right. She stepped down from the platform and the first thing, you know, I heard her scream, and there she was lying. * * *"

The defendant's motion to set aside the verdict, to dismiss the complaint, and for the direction of a verdict in its favor, are granted, with an exception to plaintiff in each instance. Ten days' stay, and thirty days to make and serve a case, allowed.