(98 App. Div. 550)

## KELLER v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. December 7, 1904.)

1. RAILROADS—PERSONS ON TRACKS—LICENSEES—DUTY TO WARN.

Where there were several beaten paths across uncultivated land between a street and the tracks of a railroad which converged at a point leading over the tracks, and 200 or 300 men a day were in the habit of passing over the tracks, and this use had been so long continued that the railroad could fairly be said to have acquiesced in the same, it was incumbent upon it to give a warning of the approach of its trains for the benefit of such licensees.

2. SAME—DUTY TO LOOK AND LISTEN—OBSTRUCTIONS OF VIEW.

Where two railroads ran parallel to each other, and the steam and smoke from the train of one shut off the view of a train on the other, it was the duty of persons approaching the track of the latter to stop before crossing until the smoke and steam had disappeared and rendered approaching trains visible.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Where one approaching a railroad track had an unimpeded view along his course for at least 36 feet, which extended in the direction of an approaching train without any interruption for 500 or 600 feet, and nevertheless walked in front of the train, and was killed, he was guilty of contributory negligence as a matter of law.

Appeal from Special Term, Erie County.

Action by William C. Keller, administrator, etc., of Daniel Keller, deceased, against the Erie Railroad Company. From a judgment for plaintiff and from an order denying a new trial defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Adelbert Moot, for appellant.
J. H. Metcalfe, for respondent.

SPRING, J. The plaintiff's intestate, while returning homeward from his work shortly after 5 o'clock in the afternoon of March 25, 1902, was struck and killed by an engine running backwards and drawing a freight train on the defendant's road. The intestate was a mechanic working in Kam's malthouse on Hertel avenue, in the city of Buffalo. In this part of the city a large number of men were employed, who were in the habit of crossing defendant's tracks in going to and from their work. Hertel avenue is an easterly and westerly street. It is crossed west of Kam's malthouse by a "Y" track of the Central Railroad. This "Y" consists of a double track running on a curve in a southeasterly direction, and crosses the defendant's road, which also consists of two tracks, running in an easterly and westerly direction at the junction. Immediately south of the Erie, and parallel with it, are two more tracks of the Central. In the apex of the angle formed by the union of the "Y" Central tracks with those of the defendant there was at the time of the accident a pile of stones about 46 feet long and varying in height from 5 feet to over 7 feet. The land between the tracks of

¶ 2. See Railroads, vol. 41, Cent. Dig. §§ 1057, 1058, 1063, 1066.

the Erie and Hertel avenue in this vicinity is open, marshy, unoc-
cupied territory, and substantially level. There is no street be-
tween Hertel avenue and the defendant's tracks near the point of
the junction with the road of defendant, but south of the parallel
tracks of the Central are several streets, which are occupied by
these workmen among others. The men employed in the malt-
house and the other establishments in this locality were accustomed
to walk along the "Y" tracks and pass over them at about the junc-
tion already mentioned. There were several beaten paths across
the uncultivated land between Hertel avenue and the tracks of
the defendant, which converged about the point of junction, and
these were also made by the workmen. Two or three hundred men
a day were in the habit of passing over these tracks, and 50 or 60
at a time were not an unusual number composing the procession
which used the defendant's tracks as well as those of the Central
road for this purpose, and principally at this point.

Keller, the plaintiff's intestate, with Gauger and Rose, fellow-
workmen, left the malthouse about 5 o'clock in the afternoon, and
walked along the Central "Y" tracks towards the junction. It was
daylight, and a clear day. The distance along the "Y" from Her-
tel avenue was 620 feet. As they came along by the stone pile, a
train consisting of 20 to 30 freight cars on the northerly of the
Central tracks was going west. The men crossed over the north-
erly of defendant's tracks, and Keller and Rose were struck by a
freight engine going east on the southerly of these tracks of the
defendant. This train consisted of about 20 or 25 cars drawn by
a Mother Hubbard engine, with tender ahead, and running 18 or
20 miles an hour. The proof fairly showed that no signals or warn-
ing were given of the approach of this train.

We think that the use of the defendant's tracks at this point by
pedestrians had been so general, notorious, and long continued that
the defendant can fairly be said to have acquiesced in that user.
It was, therefore, incumbent upon the defendant to give some
warning of the approach of its trains at this junction for the benefit
of these licensees. The existence of this obligation was especially
impressive at this time in the afternoon, for the men in the fac-
tories and establishments at Hertel avenue and farther north were
in the habit of passing over the tracks in considerable numbers
shortly after 5 o'clock, and this custom had been in vogue for many
years without any protest or hindrance from the defendant, so far
as the evidence showed. Barry v. N. Y. C. & H. R. R. Co., 92 N.
Y. 289, 44 Am. Rep. 377; Byrne v. N. Y. C. & H. R. R. Co., 104
N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512. The more disturbing
question for the plaintiff in maintaining his action is the conduct
of the intestate. We may concede that while he was passing along
by the stone pile his view of the approaching train was cut off.
After he passed that obstruction, however, there was an unimpeded
view of the oncoming train along his course for 36 feet at least,
and this view extended westward without any interruption for 500
or 600 feet. Keller was very familiar with the surroundings. He
had daily passed over this crossing for months. He knew there

were four tracks to cross at the terminus of the "Y" tracks, and he knew the frequency with which trains ran over them. The evidence is that after he got by the stone pile he turned his head in the direction of the approaching train. It was within plain view all the time after the stone pile ceased to be within his range of vision, except for the smoke and steam, to which we will advert directly. Rose and Gauger testified that they did not hear the train which struck Keller. All of these men, conversant as they were with the situation, must have been lulled into security and become careless and oblivious to danger by that very familiarity. They had often made this crossing, and without accident, and apparently anticipated no danger. Their attention may have been diverted by the westward-bound Central train. Its noise may have drowned the rumble of the train which struck Keller. The Central train was no obstruction, and the very fact that by reason of it the approach of the train on the tracks of the Erie could not be readily heard called for greater vigilance in watching out for a train which was likely to come at any time. Rose testified that steam and smoke from the Central train settled down in front of the Erie train, shutting off its view. If so, the duty was all the more insistent upon these men to stop until the smoke and steam disappeared and rendered the approach of the train visible. Heaney v. L. I. R. R. Co., 112 N. Y. 122, 127, 128, 19 N. E. 422; Manley v. N. Y. C. & H. R. R. R. Co., 18 App. Div. 420, 45 N. Y. Supp. 1108; Piper v. N. Y. C. & H. R. R. Co., 156 N. Y. 224-230, 50 N. E. 851, 41 L. R. A. 724, 66 Am. St. Rep. 560. This question was raised on a request to charge, in effect, that, if the smoke and steam obstructed the view of the coming train, Keller should have waited until this temporary obstruction lifted, which request was declined. If the version which Rose gave in one part of his testimony concerning this obstruction was correct, as the jury possibly may have found, then the defendant was entitled to this instruction. But the infirmity of plaintiff's case lies at its foundation. Whether we accept as the truth that the smoke and steam temporarily obscured the outlook, or whether there was nothing to shut off the sight of this train, the plaintiff ought not to have recovered. We realize that in cases of this kind the alleged contributory negligence generally is for the jury to dispose of in the light of all the surrounding circumstances and reasonable inferences to be drawn therefrom. When, however, one deliberately and heedlessly walks in front of an approaching train, a jury ought not to be permitted to extenuate his utter lack of ordinary care. The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event, upon questions of law only; the facts having been examined and no error found therein.

McLENNAN, P. J., and WILLIAMS, J., concur. STOVER, J., concurs in result only. HISCOCK, J., not voting.