WILLIAM C. KELLER, as Administrator of the Estate of DANIEL KELLER, Deceased, Appellant, *v.* ERIE RAILROAD COMPANY, Respondent.

1. RAILROAD — CONTRIBUTORY NEGLIGENCE. Where the evidence in an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate while crossing defendant's tracks at their intersection with another railroad, either shows that an unimpeded view of the approaching train was possible for several hundred feet at a point near to defendant's tracks, in which case the deceased could have seen the train had he actually looked, or that smoke and steam from a train on the intersecting road had so settled down upon the tracks as to obstruct the view at the time, that it was his duty to stop until the obstruction had ceased, contributory negligence is established as a matter of law.

2. RAILROAD LAW — CROSSING TRACKS OF RAILROAD AT THEIR INTERSECTION WITH TRACKS OF ANOTHER RAILROAD, AT A POINT NOT A PUBLIC CROSSING (L. 1892, CH. 676, § 53). A presumptive right to cross the tracks of a railroad company at a point, not a highway or street crossing, cannot be acquired by the public, even by long user, where in order to reach the point it is necessary to walk along the tracks of an intersecting railroad.

*Keller* v. *Erie R. R. Co.*, 98 App. Div. 550, affirmed.

(Argued October 12, 1905; decided November 21, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 25, 1904, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The action was brought to recover damages of the defendant for having negligently caused the death of the plaintiff's

intestate. The negligence alleged is that, while the deceased was lawfully and rightfully upon the defendant's railroad tracks, one of its trains, through carelessness in operation, came into collision with him. The accident occurred in a part of the city of Buffalo, where the defendant's tracks cross an unoccupied tract of land between city streets. Hertel avenue lies to the north of this land; on the east is Military road, (an important street of the city), and on the west are the tracks of the Niagara branch of the New York Central and Hudson River Railroad Company. Towards those tracks the defendant's road curves, in a southwesterly direction, from Military road. A Y branch of the New York Central and Hudson River Railroad Company, crossing Hertel avenue and curving in a southeasterly direction, crosses the defendant's tracks, at a point some 420 feet distant from Military road, and connects, some 170 feet beyond, with the Belt Line of the New York Central and Hudson River Railroad Company; which lies to the south of the defendant's road and is parallel therewith and close thereto. This Y branch consists of a double track and is built, as are the other tracks over this tract of land, upon an embankment; the general surface of the land being considerably depressed below the street levels. Near where Hertel avenue is crossed by the Y branch is a malt-house, in which the deceased was employed. He and his fellow-workmen had been accustomed, as had other persons, for many years, to walk along the tracks of this Y branch, in order to reach Military road by a short cut.

Upon the day in question, March 25, 1902, at about five o'clock in a clear afternoon, the deceased and two companions were walking from Hertel avenue, upon the tracks of the Y branch. In approaching its point of junction with the defendant's tracks, a pile of stones, placed between the two railroads, obstructed the view upon the latter's tracks to the west; but, when passed, a clear view was possible in that direction, for upwards of 400 feet. When they were approaching the defendant's tracks, a train of the New York Central and Hudson River Railroad Company was passing, upon that company's

tracks, to the west.    According to the testimony for the plaintiff, the deceased and his companions stopped, looked up the defendant's track to the west, saw no train, and continued walking upon the Y tracks and over those of the defendant.    A train of the defendant, coming from the west upon defendant's southerly track, without signals, or warning, of its approach, struck two of them; killing the one and injuring the other.    From the testimony of one of the party, the jury might have believed that steam and smoke from the passing train of the New York Central and Hudson River Railroad Company, obstructed, for the moment, a view to the west.

The plaintiff recovered a verdict against the defendant at the Trial Term; but, upon appeal to the Appellate Division, in the fourth department, the judgment entered upon the verdict was reversed and a new trial was ordered; the reversal being upon questions of law only.

*J. H. Metcalf* and *Frederick G. Bagley* for appellant.    If a railway company permits the public for a long period of time notoriously and constantly to cross its tracks, such acquiescence amounts to a license which requires the same degree of care in warning persons so using such crossing as is commensurate with the extent of such use.    (*Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 362; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289.)    The Appellate Division reversed the judgment in favor of the plaintiff and granted a new trial upon the theory that the plaintiff's intestate was guilty of contributory negligence.    The proofs do not sustain this conclusion.    (*Smith* v. *N. Y. C. & H. R. R. R. Co.*, 177 N. Y. 224; *Zwack* v. *N. Y., L. E. & W. R. R. Co.*, 160 N. Y. 362; *Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 280; *Judson* v. *C. V. R. R. Co.*, 159 N. Y. 596; *Morse* v. *N. Y. C. & H. R. R. R. Co.*, 102 App. Div. 495; *Miles* v. *F., J. & G. R. R. Co.*, 86 Hun, 508; *Shaw* v. *Jewett*, 86 N. Y. 616; *Turrell* v. *Erie R. R. Co.*, 49 App. Div. 94.)

*Adelbert Moot* for respondent. No question of fact was presented for the jury. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Woodward* v. *Erie R. R. Co.*, 106 N. Y. 369; *Young* v. *Erie R. R. Co.*, 107 N. Y. 500; *Daniels* v. *S. I. R. T. Co.*, 125 N. Y. 407; *Getman* v. *D., L. & W. R. R. Co.*, 162 N. Y. 30; *Weiland* v. *D. & H. C. Co.*, 167 N. Y. 19; *Rider* v. *Syr. R. T. R. Co.*, 171 N. Y. 139; *Walsh* v. *C. N. Y. Tel. Co.*, 176 N. Y. 166.) The undisputed facts, that even the witness Rose had to concede, and the exceptions to the charge and requests to charge, sustain the reversal of the Appellate Division and require an affirmance thereof by this court. (*Johnson* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 83; *Matter of Harriott*, 145 N. Y. 545; *Dolfini* v. *E. R. R. Co.*, 178 N. Y. 1; *Reed* v. *Met. S. C. Co.*, 180 N. Y. 315; *Berry* v. *U. B. L. S. R. Co.*, 181 N. Y. 198.) The deceased could not walk along the tracks of the New York Central and step upon the Erie crossing of those tracks, immediately in front of an approaching Erie engine, without taking the risk of that act upon his own shoulders, and thereby barring a recovery by his representatives, because the Erie Railroad Company was running its engine upon its own tracks, where there was no public crossing and where it owed the deceased no duty except not to willfully or intentionally injure him while there as a trespasser, or at most as a mere licensee. (*Harty* v. *C. R. R. Co.*, 42 N. Y. 468; *Johnson* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 79; *Adams Case*, 49 N. Y. S. R. 854; *Foley Case*, 78 Hun, 248; *Smith Case*, 17 App. Div. 617; *Lagerman Case*, 53 App. Div. 283; *Winn Case*, 65 App. Div. 572; *Gunther Case*, 81 App. Div. 606.)

GRAY, J. It appears, upon reference to the opinion below, that the Appellate Division justices considered the evidence as conclusively proving the deceased to have been guilty of contributory negligence. It, either, showed that an unimpeded view of the approaching train was possible for several hundred feet, at a point near to the defendant's tracks, in which case the deceased could have seen the train had he, actually, looked;

or, if it could be believed that smoke and steam from the passing train of the New York Central and Hudson River Railroad Company had so settled down upon the tracks as to obstruct the view, at the time, then, it was his duty to stop until the obstruction had ceased. (*Heaney* v. *L. I. R. R. Co.*, 112 N. Y. 122.) It was said that, " whether we accept as the truth that the smoke and steam temporarily obscured the outlook, or whether there was nothing to shut off the sight of the train, the plaintiff ought not to have recovered." We quite agree with the learned justices that the deceased had been guilty of contributory negligence, as matter of law. He was indifferent, apparently from the evidence, to an imminent and evident peril. If, and the plaintiff so contends, the evidence did not show that the view was obstructed by smoke and steam, then the testimony that the witnesses did not see the defendant's train, on this bright, clear afternoon, with no intervening obstruction, is incredible as matter of law. It was inherently improbable; for it was impeached by physical facts and should be rejected. (See *Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1, 4; *Hudson* v. *R., W. & O. R. R. Co.*, 145 ib. 408, 412.)

We would be satisfied to affirm the order of reversal, without further opinion, were it not that another ground, upon which the plaintiff should have failed in his action, has been negatived in the opinion below. It was considered, as " the use of the defendant's tracks at this point by pedestrians had been so general, notorious and long continued, that the defendant can fairly be said to have acquiesced in that use" and that persons, who had been in the habit of making use of its tracks, stood towards it in the character of licensees; to whom the duty was owing of giving warning of the approach of trains at that point. This, in my judgment, was distinctly erroneous. I think that it was not within the power of the defendant to permit, or to suffer, persons, not in its employment, to walk upon and along its tracks at a place where there was no highway and but an intersection of railroad tracks, and that no length of acquiescence in their doing so, under the circumstances of

this case, could create a right of user, by license, or by suffer-
ance.    This ought to be clear from section 53 of the Railroad
Law, (Laws of 1892, ch. 676), which was intended to protect
the traveling public, as well as the railroad companies.    It
reads that "no person other than those connected with or
employed upon the railroad shall walk upon or along its
track or tracks, except where the same shall be laid across or
along streets or highways, in which case he shall not walk
upon the track unless necessary to cross the same." It is
not easy, if at all possible, to see how any right, as by license,
could be acquired through acquiescence to do something
which was so clearly in violation of the statutory inhibition.
An act expressly prohibited by the public statute is, in its
inception and always must continue to be, unlawful.    The
defendant's powers and capacity to act are defined and
controlled by statute law and, as a creature of statute, it
could, neither expressly, nor passively, confer a right which
the statute denies.    Whoever walks upon, or along, the tracks
of a railroad, except when necessary to cross the same upon
some street, highway, or public place, violates the law and is
like a trespasser, and the company's servants are under no
other obligation than to refrain from willfully, or recklessly,
injuring him.

The case falls within the precise inhibition of the Railroad
Law; because, at the point where the accident happened,
there was neither street, nor highway, justifying the use of the
tracks for a crossing.    As it has been shown, the use was merely
for convenience in making a short cut between the streets and
the traveling of the public was from railroad track to railroad
track.    Even in cases where persons were killed, or injured,
while merely crossing railroad tracks, and where, by reason
of the situation and from the force of circumstances, a license
to cross was deemed to be implied, it has been held that they
took the risks incident thereto and of the dangers, to which
they might be exposed from the management of the road in
the usual and ordinary way, and that no other duty rested
upon the railroad company than not to intentionally, or

wantonly, injure them. (See *Nicholson* v. *Erie Railway Co.*, 41 N. Y. 525; *Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 ib. 243; *Gunther* v. *N. Y. C. & H. R. R. R. Co.*, 81 App. Div. 606; *Lagerman* v. *N. Y. C. & H. R. R.·R. Co.*, 53 ib. 283.) The cases of *Barry* and *Byrne* v. *N. Y. C. & H. R. R. R. Co.* (92 N. Y. 289; 104 ib. 362), are not in point; because the persons injured were crossing the tracks at points where it was conceded that there was a right of way, or an alley, or public passageway, by reason whereof it was incumbent upon the railroad company to exercise reasonable care in the movement of its trains. Such cases as those come, manifestly, within the exception of the statute. Here there was nothing of the kind. The defendant's tracks, in the locality of the accident, were distant from any street, or highway, and no excuse, save that of convenience, justified their use by the deceased and his companions. The engineer had the right to assume that they would get off the tracks and was under no obligation to depart from the usual way of operating his train. (*Spooner* v. *Del., L. & W. R. R. Co.*, 115 N. Y. 22, 33.)

The question discussed was sufficiently raised by the denials of the motion to dismiss the complaint and to direct a verdict; inasmuch as the evidence had failed to show any neglect of a duty owing to the deceased, or any wanton, or willful, conduct on the part of the defendant's servants, and it was, expressly, raised by the exception to the refusal of the court to instruct the jury that the defendant was not required to treat the place of the accident as a public street, or sidewalk, or alleyway.

For the reasons which have been given, the order appealed from should be affirmed and judgment absolute should be awarded to the defendant, upon the plaintiff's stipulation; with costs in all the courts.

Vann, J. I concur in the result only and expressly dissent from the last ground upon which the judgment is based by the prevailing opinion. The effect of the decision is that any

one, not connected by employment or otherwise with a railroad company, who walks upon its tracks at a point where there is no highway, *even with its consent,* is a trespasser and the company need use no care whatever to avoid running over him, provided it does not do so wantonly or recklessly. The sole reason advanced for this harsh conclusion is that a statute prohibits all persons from walking upon the tracks of a railroad except where they are laid across or along a street. (Railroad Law, § 53.) The next sentence of the same section, however, prohibits a person from leading a horse on a railroad track under like circumstances "without the consent of the corporation." According to the result reached by the court, the more dangerous act can be effectively permitted by a railroad company while the less dangerous cannot.

The statute is not new, for the same prohibition, in substantially the same words, appears in the act under which nearly all the railroads in the state were organized. (L. 1850, ch. 140, § 44.) The legislature, as I think, did not intend to make one a trespasser, or an outlaw, or to withdraw from him the ordinary protection of the law, if he walks on a railroad track with the consent of the company that owns it, given either expressly or by acquiescence for so long a period as to have the same effect. That would not be a reasonable or humane construction, nor has the statute been so understood by the bar or the courts during the long time it has been in force.

Thus in a case which arose long after the original statute was passed, the decedent was negligently run over by a railroad train while crossing the track at a point where the owners of adjacent land had a right of way and the public had been in the habit of crossing for thirty years. The court held the company liable, giving no heed to the private right of way with which the decedent had no connection, and sustaining the recovery on the ground of implied permission. Judge ANDREWS, speaking for the court, said : " There can be no doubt that the acquiescence of the defendant for so long a time in the crossing of the tracks by pedestrians, amounted

to a license and permission by the defendant to all persons to cross the tracks at this point. These circumstances imposed a duty upon the defendant in respect of persons using the crossing to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right therein existed; but so long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point and was bound to such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury. * * * In the case of the movement of a train of cars over a track at a place which the public are permitted to use as a crossing the company are necessarily apprised that it is attended with danger to life. The company is an actor at the time in creating the circumstances which imperil human life, and it would be alarming doctrine that it was under no duty to exercise any care in the movement of its trains." (*Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289, 292.)

The same result was reached in a later case in which Judge EARL, after reviewing all the authorities, held, as stated in the syllabus, that, " Where the public for a long period of time have notoriously and constantly been in the habit of crossing a railroad at a point not in a traveled public highway, with the acquiescence of the railroad corporation, this acquiescence amounts to a license and imposes a duty upon it, as to all persons so crossing, to exercise reasonable care in running its trains so as to protect them from injury." (*Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 362.)

These cases have never been overruled. They are later in date than any decision by this court cited in the prevailing opinion to uphold the doctrine there laid down. I regard them as controlling, although the effect of the statute was not considered in either.

Moreover, the same section which contains the prohibition in question relieves a railroad company from liability to a

passenger injured while on the platform of a car in violation
of a regulation duly posted, but it does not relieve the com-
pany from liability for negligently running over a man walk-
ing on its tracks in violation of the statute. It creates no
right which the defendant can enforce against a pedestrian
who did nothing but what it consented to. There is no
breach of duty to the defendant, but, according to the most
extreme view, a breach of duty to the state. Assuming that
the state might punish him for violating the statute, the
defendant is estopped from pleading an act done with its con-
sent, as a defense to its own negligence. (Penal Code, § 155.)
It cannot consent to an act and then claim that the act excused
its own wrongdoing. If the violation of a statute directly
contributes to the injury, a recovery may be denied on the
ground of contributory negligence, but that falls far short of the
proposition that one walking on the track with the consent of
the owner of that track may be run over without any liability
for gross carelessness, provided only the company mercifully
refrains from wanton or reckless injury.

Even if the act of the decedent in walking on the track,
although consented to by the defendant, was unlawful, it
constituted no defense to the action. The only effect of his
act was to place him in a position where the defendant's neg-
ligent act could injure him. It was a condition, not a cause.
Walking on the track did not injure him. His own act was
not the agency which caused his death, but the negligent run-
ning of the train by the defendant. He did not kill himself.
The defendant killed him. His act, if unlawful, was not the
proximate cause, for the result would have been the same if
his act had been lawful. The statute does not make his act
a defense and the courts should not, any more than if he had
been negligently run over by the defendant while traveling in
violation of the Sunday law, or while driving at a rate of
speed forbidden by law. In such cases, as this court has
always held, the violation of the statute is not the imme-
diate cause of the injury and will not defeat a recovery.
(*Connolly* v. *Knickerbocker Ice Co.*, 114 N. Y. 104, 108;

*Platz* v. *City of Cohoes*, 89 N. Y. 219 ; *Wood* v. *Erie Ry. Co.*, 72 N. Y. 196 ; *Hoffman* v. *Union Ferry Co.*, 68 N. Y. 385 ; *Carroll* v. *Staten Island Railroad Co.*, 58 N. Y. 126, 132.)

Finally, no such defense was set up in the answer and no such question was raised by any exception taken at the trial. So far as the appeal book shows, the statute was not alluded to, directly or indirectly, from the service of the summons until after the verdict was rendered. The trial court had no opportunity to consider it. If the point had been raised, *non constat* evidence of willful and intentional injury would have been introduced by the plaintiff. " An objection cannot be taken for the first time upon appeal which might have been obviated if raised below ; it must appear that no possible answer could have been made to it." (*Osgood* v. *Toole*, 60 N. Y. 475, 479.) With the record in this condition we have no power to consider or decide the question because it is not before us. (*Hecla Powder Co.* v. *Sigua Iron Co.*, 157 N. Y. 437 ; *Wicks* v. *Thomson*, 129 N. Y. 634.)

I vote to affirm and for judgment absolute, but solely on the ground that the plaintiff's intestate was guilty of contributory negligence as matter of law.

Memorandum, CULLEN, Ch. J.　As to the point of difference between my Brothers GRAY and VANN I entertain this view : The statute prescribes : " No person other than those connected with or employed upon the railroad, shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same."

I concur with Judge VANN in the proposition that by long user the public may acquire, despite the terms of the statute, a presumptive right to cross a railroad track at a point that is not a street or highway. The proposition seems to be sustained by the authorities. In this case, however, the point at which the deceased sought to cross the defendant's railroad

was where it was intersected by the tracks of the New York Central Railroad Company, which tracks he had been using as a path in traveling to and from the brewing house where he was employed. The command of the statute is explicit and subject to no qualification, that a person other than an employee of a railroad shall not walk upon its tracks except where it is necessary to cross the same. The deceased was not only crossing the tracks of this defendant at a point that was not a highway or street crossing, but he was traveling along the tracks of the New York Central Railroad Company. Now, if we assume that by acquiescence on the part of the company and user by the public, the public may acquire a right to cross the company's tracks, at any other point, there is, nevertheless, a point at which the public cannot acquire such a right, and that is where another railroad intersects those tracks. In the face of the express command of the statute the public cannot by user acquire the right to use the tracks of one railroad as a highway and, therefore, it cannot acquire the right to cross the tracks of another railroad at its intersection with the first.

I concur in the affirmance of the judgment appealed from, also, upon the ground stated by the learned Appellate Division.

HAIGHT and WERNER, JJ., concur with GRAY, J.; BARTLETT, J., concurs with VANN, J.; CULLEN, Ch. J., reads memorandum for affirmance; O'BRIEN, J., absent.

Ordered accordingly.