WALANTY JERZEWSKI and Another, as Administrators, etc., of STEPHEN JERZEWSKI, Deceased, Appellants, *v.* ERIE RAILROAD COMPANY, Respondent.

*Railroads — action for death of intestate while he was on defendant's tracks — nonsuit at close of plaintiffs' case was proper.*

Appeal from a judgment of the Supreme Court in favor of the defendant, entered in the Erie county clerk's office November 25, 1921, upon the dismissal of the complaint by direction of the court at the close of plaintiffs' case.

Judgment affirmed, with costs. All concur, except Davis and Crouch, JJ., who dissent in an opinion by Crouch, J.   Present — Hubbs, P. J., Clark, Davis, Crouch and Taylor, JJ.

CROUCH, J. (dissenting): Plaintiffs' intestate, while on defendant's tracks, was run down and killed by cars which were being switched. At the close of plaintiffs' case a nonsuit was ordered. The facts which the jury could have found were substantially as follows: Spaulding & Spaulding were operators of a coal trestle located near defendant's tracks. The coal was sold to small dealers and draymen who delivered it to their own customers. For a period of seven years from 1913 to 1920, there had been a shortage of coal. During that time vehicles belonging to the small dealers and draymen would congregate at or near the trestle, line up in the order of their coming and await the arrival of the coal cars on defendant's railroad, which were to be delivered at the trestle. It was customary for the coal train to pass the Spaulding trestle going north to other trestles and while passing the employees on the train would signal to the waiting dealers the number of cars to be delivered to Spaulding, but they did not indicate the type of coal. In about half an hour the cars for the Spaulding trestle would be brought back and left upon the main track for ten or fifteen minutes while the engine went to the trestle to remove therefrom the empty cars. The empties would be drawn out, backed down and coupled to the loaded cars left standing on the main track. Then the train, after a forward movement, would be backed upon the trestle, where the delivery would be completed by cutting off and leaving the loaded cars. During this period of seven years the small dealers, waiting for coal, were accustomed to leave their vehicles in line, and to go from Spaulding's property up the embankment and onto the main line tracks over a well-defined path or depression. Their purpose was to ascertain the size and character of coal contained in the cars left standing on the main track and about to be delivered by the operation above described. If the cars did not contain the kind of coal desired, they would at once take their vehicles out of the waiting line and go on to some other trestle. If they found suitable coal, they would wait until the cars were placed on the trestle and unloaded. This long-continued custom and practice was well known to the defendant and its acquiescence therein might be inferred. On March 30, 1920, the plaintiffs' intestate was killed while following this usual custom. On this occasion the loaded cars were not left upon the main line. Instead, the train was first backed on the trestle and coupled to the empties standing thereon, which were then withdrawn upon the main line to a point beyond the switch point, disconnected and bumped past the switch point, it being the intention then to back the loaded cars onto the trestle. When the empty cars were first bumped, a truck on one of them split the switch, causing them to stop. It was at this

moment that decedent arrived to examine the cars. The train was again coupled to the empties, moved forward over the switch point and again bumped. The decedent was struck by the first empty car as it was coming back. There was no trainman on the forward-moving end of the empty cars. The engineer was in the cab on the side opposite from where decedent was struck. No warning was given or sounded. If decedent was as matter of law a trespasser, the judgment below may be affirmed; otherwise, if he was a licensee. (*Barrett* v. *Brooklyn Heights Railroad Co.*, 188 App. Div. 109; affd., 231 N. Y. 605, and cases there cited.) The operation of the cars under the facts here might, as to a licensee, be affirmative negligence. (*Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391, 395.) The contention of the defendant is that under section 83 of the Railroad Law and section 1990, subdivision 4, of the Penal Law, decedent was a trespasser. (*Keller* v. *Erie R. R. Co.*, 183 N. Y. 67.) Because of the divergent views expressed by the members of the court who sat in the *Keller* case, I think that decision is not controlling under the facts here. The object of the statutory prohibition was, in the interest of public safety, to prevent casual trespassing on railroad rights of way. An act which before the enactment of the statutes was not criminal was made such so that it might the better be prevented under the threat of criminal prosecution. The statutes were not, I think, intended to affect civil rights and duties. They were passed *alio intuitu*. (Compare *Clark* v. *Doolittle*, 205 App. Div. 697.) Otherwise, neither by consent nor even by invitation, could a railroad clothe a person going on its right of way with any rights beyond those of a mere trespasser. Concededly, that is not so where persons have long been accustomed to cross at a point not a public highway. Nor does that rule, in spite of some expressions used in the books, rest upon the theory that such user has by prescription or otherwise changed a strip of railroad right of way into a public highway, thereby bringing such instances within the exception of the statutes. Long-continued acquiescence, though it does not become an invitation (*Vaughan* v. *Transit Development Co.*, 222 N. Y. 79, 82), may ripen into a license or permission which is sufficient to impose on the railroad the duty to use reasonable care in the movement of its trains, notwithstanding the language of the statutory prohibitions. (*Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 362.) The underlying principle is that where continued use amounts to implied consent and to fair notice of the probable presence of people who may be injured, the railroad may not disregard the danger and by affirmative negligent act inflict injury. Within that principle, it is immaterial whether that probable presence be at a crossing or elsewhere. (*Shipman* v. *Lehigh Valley R. R. Co.*, 147 App. Div. 383.) Whether the use which had been made of the railroad right of way here was such as to imply consent and to amount to fair notice was, with the questions of negligence and contributory negligence, for the jury to pass on. The judgment should be reversed on the law, and a new trial granted, with costs to appellants to abide the event. Davis, J., concurs.