MARIO ZAMBARDI, JR., an Infant, by MARIO ZAMBARDI, SR., His Guardian ad Litem, et al., Appellants, v. SOUTH BROOKLYN RAILWAY COMPANY, Respondent.

Argued September 28, 1939; decided November 21, 1939.

*Abraham N. Levy, K. Carl Hartenstein* and *Samuel S. Leibowitz* for appellants.

*Ralph E. Hemstreet* and *W. Harry Sefton* for respondent.

LEHMAN, J.   The infant plaintiff, a seven-year-old boy, was struck by a trolley car operated by the defendant railway company upon a private right of way, which it owns. He sustained very serious injuries.   In this action to recover the consequent damages, judgment in his favor was entered, upon the verdict of a jury, in the sum of $20,000, and in favor of his father in the sum of $3,000.   Upon appeal to the Appellate Division, the judgment was reversed on the law and the complaint dismissed.

At the point where the accident occurred the railroad track was not " laid across or along streets or highways " and it is said that any person walking across the tracks violated the provisions of section 83 of the Railroad Law (Cons. Laws, ch. 49) and section 1990 of the Penal Law, and became a trespasser, who may recover damages caused by  the negligence of employees of the railroad company only where such negligence is willful or wanton.   Here the

plaintiffs' evidence, which upon this appeal we must accept as true, establishes that the infant plaintiff was crossing the track from west to east on a pathway that had been beaten down by others who had crossed there in the past and that the motorman failed to exercise the vigilance which a reasonably prudent person would have exercised at a point where persons have long crossed the track without objection from the railroad company. There is no evidence of willful or wanton negligence. The question, then, to be decided in this case is whether the infant plaintiff was, as matter of law, a trespasser on the defendant's property, to whom the railroad company owed no duty of vigilance.

In *Keller* v. *Erie R. R. Co.* (183 N. Y. 67, 71) the defendant was charged with causing the death of the plaintiff's intestate while he was walking, with some companions, upon and along the defendant's tracks, " where there was no highway and but an intersection of railroad tracks." This court affirmed an order of the Appellate Division reversing a judgment in favor of the plaintiff on the ground that as matter of law the plaintiff's intestate was guilty of negligence in failing to see the approaching train. Except for such contributory negligence on the part of the plaintiff's intestate, the Appellate Division assumed, or held, that the plaintiff might have recovered, stating in its opinion that " the use of the defendant's tracks at this point by pedestrians had been so general, notorious and long continued that the defendant can fairly be said to have acquiesced in that user. It was, therefore, incumbent upon the defendant to give some warning of the approach of its trains at this junction for the benefit of these licensees." (98 App. Div. 550, 552.) Though this court, expressly land unanimously, placed its affirmance of the order of the Appellate Division on the ground that the plaintiff's intestate was guilty of negligence which contributed to his death and which would bar recovery, the opinion of Judge GRAY goes further and states: " Whoever walks upon, or along, the tracks of a railroad, except when necessary to cross the same upon some street, highway, or public place, violates the

law and is like a trespasser, and the company's servants are under no other obligation than to refrain from willfully, or recklessly, injuring him " (p. 72).

What was there said was, of course, unnecessary to the decision and it received the full concurrence of only three judges. One judge was absent and two judges, though concurring in the decision on the ground first stated in the opinion, " expressly dissented from the last ground upon which the judgment is based by the prevailing opinion " (p. 73). CULLEN, Ch. J., concurred with the dissenting judges " in the proposition that by long user the public may acquire, despite the terms of the statute, a presumptive right to cross a railroad track at a point that is not a street or highway. The proposition seems to be sustained by the authorities * * *. The command of the statute is explicit and subject to no qualification, that a person other than an employee of a railroad shall not walk upon its tracks except where it is necessary to cross the same. The deceased was not only crossing the tracks of this defendant at a point that was not a highway or street crossing, but he was traveling along the tracks of the New York Central Railroad Company. * * * In the face of the express command of the statute the public cannot by user acquire the right to use the tracks of one railroad as a highway and, therefore, it cannot acquire the right to cross the tracks of another railroad at its intersection with the first " (p. 77). Only subject to the limitations set forth in this memorandum of CULLEN, Ch. J., did the prevailing opinion obtain the concurrence of a majority of the court.

In spite of the divergent views expressed by the members of this court who sat in the *Keller* case, the rule of law stated in the prevailing opinion has been generally followed, at least where a person was injured while walking *along* a railroad track and not while merely walking *across* it. (*Jerzewski* v. *Erie R. R. Co.*, 215 App. Div. 748; affd., 242 N. Y. 592, and *Gleason* v. *Central N. E. Ry. Co.*, 261 N. Y. 333.) In the latter case the court, while recognizing that strong argument might be made for a different rule, said that

it felt bound by the authority of the earlier case. When the court has been called upon to define the obligation of the railroad towards a pedestrian merely crossing the railroad tracks along a way used by the public with the knowledge and acquiescence of the railroad company, the court has always been inclined to limit the rule of the *Keller* case in manner suggested in the concurring memorandum of Cullen, Ch. J.

Thus in the case of *Lamphear* v. *N. Y. C. & H. R. R. R. Co.* (194 N. Y. 172, 174) the court, in an opinion again written by Gray, J., held that the rule of the *Keller* case did not apply in a case where " for a long series of years the public, with the acquiescence and with the permission and consent of the railroad company, had been accustomed to cross the railroad tracks at a point where this accident happened." The court, citing the earlier cases of *Barry* v. *N. Y. C. & H. R. R. R. Co.* (92 N. Y. 289) and *Byrne* v. *N. Y. C. & H. R. R. R. Co.* (104 N. Y. 362), said that in such a situation the railroad company " was bound to use reasonable care to protect the persons from injury, whom it so permitted to cross at that point." In *Skzypek* v. *L. I. R. R. Co.* (249 App. Div. 629; affd., 275 N. Y. 508) the court applied the same test of liability in a similar situation.

The distinction which the court has drawn is this: For the protection of the traveling public, as well as the railroad companies, the State has forbidden persons other than employees of the railroad companies to walk " upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same." (Railroad Law, § 83.) Violation of the statute is made a penal offense (Penal Law, § 1990), and, however frequently repeated or long continued, cannot create a public way, which the public may lawfully use, *along* its tracks. Even an invitation by the railroad company to the public to violate the Penal Law cannot make such violation lawful or confer upon the wrongdoer the private rights which, under such invitation, an innocent wayfarer would enjoy. On the other hand, the law, under a reasonable construction.

does not prohibit the railroad company from inviting or permitting the public to *cross* the railroad tracks from side to side at a point which is not in strict sense a public street or highway, but which, through such invitation or permission, becomes a way open to public use, where the railroad is bound to exercise reasonable care to protect the safety of the public.

It is true that under a literal construction of the statute a person crossing the tracks of a railroad company, even with the consent of the company, except at a public street or highway, would be acting unlawfully and the railroad company could not, either by affirmative act or by long continued inaction, create a public passageway where there is no street or highway. Such a construction would, however, ignore the evident intent of the statute and produce a result so unreasonable that it could not have been contemplated by the Legislature. The prohibition, it should be noted, applies only to persons *walking* along or upon the tracks. The same section provides that "any person riding, leading or driving any horse or other animal upon any railroad * * * other than at a farm or street or forest crossing, without the consent of the corporation, shall forfeit to the people of the state the sum of ten dollars, and pay all damages sustained thereby to the party aggrieved." (Railroad Law, § 83.) Thus the statute recognizes that there may be a farm or forest crossing as well as a street crossing and that even at other places on the track a railroad may consent to a person riding, leading or driving a horse or other animal upon its tracks. By reasonable implication the statute recognizes the right of a railway company, by invitation or long continued acquiescence, to create a crossing over the railway tracks which the public may use as a public way even though technically not a street or highway. The Circuit Court of Appeals (2d Circuit) has so construed the statute and our decisions. (*Lehtohner* v. *N. Y., N. H. & H. R. R. Co.*, 188 Fed. Rep. 59; *Erie R. R. Co.* v. *Burke*, 214 Fed. Rep. 247. Cf. *Felton* v. *Aubrey*, 74 Fed. Rep. 350.)

The question remains whether in this case there is proof that at the time of the accident the infant plaintiff was crossing the defendant's track upon a way or passage which had become a public way by acquiescence or invitation of the defendant railroad company. The defendant company had, in this case, done no affirmative acts which might be considered an invitation to the public as in the case of *Lamphear* v. *N. Y. C. & H. R. R. R. Co.* (*supra*), but it appears from the evidence that, at least until six months before the accident, the public, with the knowledge of the railroad company and without objection from it, crossed the tracks of the railroad company at or near the point where the accident occurred. A well-marked path had been worn down from a highway on one side of the tracks, across the tracks, to a highway on the other side, and was used by many persons as a short cut. A street, Avenue Y, which otherwise would have connected these highways, stopped on one side a short distance before it reached the tracks. If Avenue Y were cut through it would cross the tracks where the pathway had been worn down. The proof that a public way existed there, with the implied permission of the railroad company, until six months before the accident is, perhaps, not as persuasive as the proof in the case of *Skzypek* v. *Long Island R. R. Co.* (*supra*), but it is, plainly, sufficient to sustain such a finding.

The defendant does not, indeed, seriously dispute that there is evidence that at one time there was a public way across its tracks. It maintains that six months before the accident it gave unequivocal notice to the public that it withdrew any permission it might previously have given to the public to use its premises as the public way. (Cf. *Erie R. R. Co.* v. *Burke, supra.*) It is undisputed that the railroad company did put up a fence on one side of the tracks across the place where Avenue Y would, if continued, cross the tracks, and placed upon the fence two signs, reading " Private Property. No Trespassing." The fence effectually stopped drivers of vehicles who might have trespassed upon the property. It did not stop pedestrians who continued to

cross the tracks there, wearing down a path at one end of the fence. On the other side of the tracks the defendant placed no fence or signs and the jury has found that the plaintiff crossed from that side. The fence and signs gave unequivocal notice that vehicles might not be driven across the tracks but from the position of the fence and signs on only one side of the track, and from the circumstance that without objection from the railroad company the public continued to walk across the track, a question of fact arose whether the railroad company intended and could reasonably be understood to have intended to give notice that it withdrew the premission previously given to the public to use its premises as a right of way for pedestrians.

For these reasons the judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgment accordingly.