Emilio Nunez, J.
In this action brought to recover for personal injuries and medical and hospital expenses, the infant plaintiff was awarded $75,000 by the jury, and his mother was awarded the sum of $10,185.60. Upon rendition of the verdict, the defendant moved to set it aside upon all the grounds set forth in the CPLB, except inadequacy.
The infant plaintiff, then 11 years old, was injured August 21, 1958, in Freeport, Long Island, when the bicycle that he and another boy were carrying came in contact with the defendant’s third rail. The boy suffered severe burns, which were described as the most painful injury a human being can endure. After a long period of hospitalization in Long Island, he underwent a series of 9 or 10 extremely painful skin-grafting operations *770 in a Manhattan hospital, in an endeavor to improve his condition. He is badly and permanently scarred and disfigured; concededly, the verdict as to him is not excessive. The amount awarded to the mother is the total sum of the hospitalization and medical bills, so that the amount is not excessive, if she is entitled to recover.
The contention of the plaintiffs was that the boy and two companions were crossing the railroad track at a point opposite a public path which had been created by long usage, to the knowledge of the defendant railroad. There was substantial evidence indicating that there had been a path leading to points north and south of the railroad track and that over a long period of time the public in substantial numbers had used this path and crossed the tracks at the point where the infant plaintiff came in contact with the third rail and was injured.
A review of my charge to the jury indicates that the issues determinative of defendant’s liability were clearly and pointedly submitted to them. The jury, by its verdict, has found that ‘ there was a path leading from the utility road * * * to the railroad tracks and continuing on the other side of the tracks ” and that this path “ had been used for a long time prior to August, 1958, by members of the public in substantial numbers * * * for a sufficiently long period of time * * * to put the Long Island Railroad on notice that its tracks were being crossed at this point in such substantial numbers by the public for such a long period of time as to constitute a consent or an acquiescence by the railroad that the public cross its tracks at this point ’ ’. The court charged the jury that if they found there was no path and there was no public way created by a crossing by many people over a long period of time, that in such event the verdict must be for the defendant, because the infant plaintiff would have no right to be on the railroad track; that in such a ease he would be a trespasser and the railroad owed him no duty at all except to refrain from willful or wanton injury, and that there was no evidence in this case of any willful or wanton or reckless act, on the part of the railroad, which caused the injury. The court charged: “ So I repeat to you again that unless you find that the railroad knew or should have known that for a long period of time the public crossed these tracks in substantial numbers, thereby acquiescing in the crossing of its tracks by the members of the public, then you need consider the case no further, because unless you so find, the plaintiff has no right to recover in this case at all, and your verdict must be for the defendant.”
*771 It has been held that where the public for a long time continuously and openly crosses railroad tracks with the acquiescence of the railroad, the latter is under a duty to exercise reasonable care to prevent injury to the public (see Byrne v. New York Cent. & Hudson Riv. R. R. Co., 104 N. Y. 362; Barry v. New York Cent. & Hudson Riv. R. R. Co., 92 N. Y. 289; Lamphear v. New York Cent. R. R. Co., 194 N. Y. 172; Zambardi v. South Brooklyn Ry. Co., 281 N. Y. 516 [1939]; Danna v. Staten Is. R. T. Ry. Co., 252 App. Div. 776, affd. 277 N. Y. 714 [1938] ).
The question of whether the infant plaintiff was a trespasser or not was submitted to the jury as a question of fact. By their verdict the jury has decided that the infant was using a pathway which had been used by many others for a long period of time and that he was therefore entitled to the protection of the exercise of reasonable care by the defendant in the maintenance of its tracks and the dangerous third rail.
In the following cases, judgments in plaintiffs’ favor have been sustained by the courts, and the provisions of section 1990 of the Penal Law and section 83 of the Railroad Law have been held inapplicable (Coger v. Long Is. R. R. Co., 296 N. Y. 978 [1947]; Zambardi v. South Brooklyn Ry. Co., 281 N. Y. 516 [1939] ; Swift v. Staten Is. R. T. R. R. Co., 123 N. Y. 645 [1890]; Danna v. Staten Is. R. T. Ry. Co., supra; McDermott v. New York Cent. R. R. Co., 14 A D 2d 642 [3d Dept., 1961]).
In Coger v. Long Is. R. R. Co. (supra) two children in their teens crossed the tracks on a pathway used by the public. Defendant contended that the accident occurred on the tracks and that the children were in violation of section 83 of the Railroad Law and section 1990 of the Penal Law and were trespassers to whom defendant owed no duty other than to refrain from willful injury or wanton negligence. The Court of Appeals, in reversing a judgment of the Appellate Division, which had dismissed the complaint, stated: “ Judgment reversed * * * on the ground that the record presents jury questions as to negligence and contributory negligence. Plaintiffs were not trespassers as a matter of law (Zambardi v. South Brooklyn Ry. Co., 281 N. Y. 516).”
In the Zambardi case (supra) a 10-year-old boy was struck by defendant’s trolley at a point not a public highway, across the tracks. He was crossing on a pathway established by others who had crossed there in the past. The court held that he was not a trespasser as a matter of law and that defendant owed him the duty of reasonable care. At pages 522, 523, the court stated:
*772 ‘ ‘ The distinction which the court has drawn is this: For the protection of the traveling public, as well as the railroad companies, the State has forbidden persons other than employees of the railroad companies to walk ‘ upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same. ’ (Railroad Law, § 83.) Violation of the statute is made a penal offense (Penal Law, § 1990), and, however frequently repeated or long continued, cannot create a public way, which the public may lawfully use, along its tracks. Even an invitation by the railroad company to the public to violate the Penal Law cannot make such violation lawful or confer upon the wrongdoer the private rights which, under such invitation, an innocent wayfarer would enjoy. On the other hand, the law, under a reasonable construction, does not prohibit the railroad company from inviting or permitting the public to cross the railroad tracks from side to side at a point which is not in strict sense a public street or highway, but which, through such invitation or permission, becomes a way open to public use, where the railroad is bound to exercise reasonable care to protect the safety of the public.
“It is true that under a literal construction of the statute a person crossing the tracks of a railroad company, even with the consent of the company, except at a public street or highway, would be acting unlawfully and the railroad company could not, either by affirmative act or by long continued inaction, create a public passageway where there is no street or highway. Such a construction would, however, ignore the evident intent of the statute and produce a result so unreasonable that it could not have been contemplated by the Legislature. The prohibition, it should be noted, applies only to persons walking along or upon the tracks. * * * By reasonable implication the statute recognises the right of a railway company, by invitation or long continued acquiescence, to create a crossing over the railway tracks which the public may use as a public way even though technically not a street or highway. The Circuit Court of Appeals (2d Circuit) has so construed the statute and our decisions. (Lehtohner v. N. Y., N. H. & H. R. R. Co., 188 Fed. Rep. 59 ; Erie R. R. Co. v. Burke, 214 Fed. Rep. 247. Cf. Felton v. Aubrey, 74 Fed. Rep. 350.) ” (Emphasis supplied.)
The facts in Zambardi parallel the facts in our case. The Court of Appeals held that the trial court’s finding that there' was a path which had become a public way by acquiescence or invitation of the defendant was sustained by the evidence that *773 the public had, at or near the scene of the accident, crossed the tracks at least until six months before the accident, with the defendant’s knowledge and without its objections. At page 524, the court described the scene of the accident as follows: ‘ ‘ A well-marked path had been worn down from a highway on one side of the tracks, across the tracks, to a highway on the other side, and was used by many persons as a short cut. A street, Avenue Y, which otherwise would have connected these highways, stopped on one side a short distance before it reached the tracks. If Avenue Y were cut through it would cross the tracks where the pathway had been worn down. The proof that a public way existed there, with the implied permission of the railroad company, until six months before the accident is, perhaps, not as persuasive as the proof in the case of Sksypek v. Long Island R. R. Co. (supra), but it is, plainly, sufficient to sustain such a finding. ’ ’
In Skzypek v. Long Is. R. R. Co. (245 App. Div. 309; same case, 249 App. Div. 629, affd. 275 N. Y. 508) decedent was killed by contact with a third rail while crossing defendant’s tracks. At the place of occurrence, a street ended at either side of the right of way, which had at one time been closed by a wire fence. The fences had been broken 10 years prior to the accident and openings remained. The Appellate Division stated in part (p. 311): * ‘ During that period, at that point, the public continuously crossed defendant’s tracks to go from one side to the other. A path had been worn where they had crossed. From such open and notorious use it might be inferred by a jury that the defendant had acquiesced in and consented to the crossing by the public. Thus, as between the public and defendant, a public highway or passageway was created, and the act of deceased in crossing was within the exception of the act. Deceased was a licensee, and defendant oioed her the duty of giving a reasonable warning that her pathway led across a death-dealing third rail. There was proof that there was an absence of reasonable warning.” (Italics supplied.) The court also stated (p. 311): “ The essence of the decision in the Lamphear case is that when a railroad company permits the public over a series of years to cross its railroad tracks from one side to the other at a place where there is not the usual street or highway, the railroad company in effect, as between it and the public, has created a public highway or passageway, and a person who crosses at such a point is within the exception of the statute; therefore, is not a trespasser, and is entitled to receive from the railroad company the exercise of a reasonable degree of care for his *774 protection.” To similar effect, involving a boy who was injured when he came in contact with a third rail, see Danna v. Staten Is. R. T. Ry. Co. (supra).
The law seems to be well established by many cases, including those cited above, that under the circumstances of this case it became a question of fact for the jury to decide whether the infant plaintiff was a trespasser or a licensee, and if he was held to be a licensee, as he was by the verdict of the jury, the defendant owed him reasonable care in maintaining its tracks with a live third rail. The issues of negligence and contributory negligence were also submitted to the jury, and the jury, by its verdict, found the defendant negligent and the injured boy free from contributory negligence.
I do not feel that I have any right to disturb these findings.
Defendant contends that the court also erred in admitting two blown-up aerial photographs of the scene of the occurrence and the surrounding area. These photographs were properly authenticated by several witnesses familiar with the area portrayed, who testified that the photographs were correct representation of the place and who identified the various roads, the railroad track itself, the claimed path, and the houses surround' ing the area. Indeed, my recollection is that at least one and possibly two witnesses identified their own houses from one of the photographs. The testimony of these witnesses, who testified in detail what was depicted by the photographs, went unchallenged. The photographer also testified at what altitude the photographs were taken, how they were taken, developed, etc. I believe that these photographs were properly received in evidence.
For all of the foregoing reasons, defendant’s motion to set the verdict aside is in all respects denied, and the plaintiffs may enter judgment against the defendant for the amounts awarded by the jury.
Defendant is granted 30 days ’ stay of execution and 60 days to make a case.