MAUREEN A. WATERS, an Infant, by Her Guardian ad Litem, GEORGE F. WATERS, et al., Plaintiffs, *v.* LONG ISLAND RAIL ROAD COMPANY, Defendant.

Supreme Court, Trial Term, Nassau County, December 29, 1966.

516

*John A. Anderson* for plaintiffs. *George M. Onken* and *Reid A. Curtis* for defendant.

BERNARD S. MEYER, J. In this nonjury action for personal injuries, defendant is awarded judgment dismissing the complaint at the end of the entire case. Plaintiff, Maureen Waters, was injured when she came in contact with the electrified third rail while crossing a part of defendant's railroad tracks known as the Mitchell spur. Her action is based on the contentions that (1) the short cut she was using had become a public way and she was, therefore, a licensee entitled to warning which was not given, and (2) even if she be deemed a trespasser, defendant as the operator of the high-voltage third rail owed her a duty to warn.

Involved in the first contention is that portion of section 83 of the Railroad Law which provides: "No person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same" (see, also, Penal Law, § 1990, subd. 4). Notwithstanding that the concluding clause of that provision equates "cross" with "walk upon", the statute has been construed as prohibiting a railroad company from permitting the public to walk *along* its tracks, but not to prohibit it from "permitting the public to *cross* the railroad tracks from side to side at a point which is not in strict sense a public street or highway, but which, through such invitation or permission, becomes a way open to public use, where the railroad is bound to exercise reasonable care to protect the safety of the public" (*Zambardi* v. *South Brooklyn Ry. Co.*, 281 N. Y. 516, 523; emphasis in original). Those thus permitted to cross railroad tracks are classified as licensees, to whom the railroad owes a duty of reasonable care in the movement of its trains (*ibid., Byrne* v. *New York Cent. & Hudson Riv. R. R. Co.*, 104 N. Y. 362; PJI 2:96; PJI 2:176); but to whom it is not liable for "mere passive negligence" (*Byrne* v. *New York Cent. & Hudson Riv. R. R. Co., supra*, p. 366) except when there

exists a dangerous condition along or in proximity to the passageway, in which event there is a duty to give reasonable warning of the condition or otherwise take reasonable precaution to prevent injury (*Danna* v. *Staten Is. R. T. Ry. Co.*, 252 App. Div. 776, affd. 277 N. Y. 714; *Skzypek* v. *Long Is. R. R. Co.*, 245 App. Div. 309, on second appeal 249 App. Div. 629, affd. 275 N. Y. 508; *Jarvis* v. *Long Is. R. R. Co.*, 50 Misc 2d 769, affd. 25 A D 2d 617 (all involving a live third rail); see, also, *Carradine* v. *City of New York*, 13 N Y 2d 291; PJI 2:95. The evidence establishes* that defendant had erected no sign at or near the area where plaintiff crossed, and since plaintiff, then 8 years of age was accompanying her 11-year-old sister, the finding of the court on the issues of negligence and contributory negligence would be for plaintiff, were she in fact a licensee.

The evidence does not, however, sustain a finding that plaintiff was a licensee. Plaintiff acknowledges that because of a fence along part of the north side of the tracks she had to cross diagonally. It may well be that one who crosses diagonally is a trespasser as a matter of law (see *Town of Leray* v. *New York Cent. R. R. Co.*, 226 N. Y. 109; cf. *Meaney* v. *Long Is. R. R. Co.*, 274 App. Div. 908, mot. for lv. to app. den. 298 N. Y. 935), but it is not necessary to rest decision on that tenuous distinction. There is no evidence that defendant had *actual* knowledge of use of the crossing; indeed, the court infers the contrary from the testimony that the spur was used only for an occasional freight train and, when Roosevelt Raceway was open, for trains to the raceway in the evening, and from the fact that all three police officers who testified admitted that they made no report of such use to the railroad. For the court to find constructive notice, the evidence must establish a use so general, notorious and long continued that defendant can fairly be said to have acquiesced in it (*Zambardi* v. *South Brooklyn Ry. Co., supra*) a use so extensive and notorious and for such a length of time that the railroad should have known of it (*McDermott* v. *New York Cent. R. R. Co.*, 14 A D 2d 642; see *Byrne* v. *New York Cent. & Hudson Riv. R. R. Co., supra*) a crossing "open and visible" (*Clarke* v. *New York Cent. & Hudson Riv. R. R. Co.*, 104 App. Div. 167). In *Zambardi* a well-marked path had been worn down from a highway on one side of the tracks across the tracks to a highway on the other side; in *Skzypek* v. *Long Is. R. R. Co.* (*supra*) a path had been worn, leading through openings in the

---

* The court erroneously limited admission of evidence that there was no sign to the issue of contributory negligence. It was admissible on the issue of negligence as well.

defendant's fence, and defendant had at some time put up turn-stiles; in *Coger* v. *Long Is. R. R. Co.* (296 N. Y. 978) the tracks in defendant's freight yard were on an embankment 25 to 30 feet high and there was a steep path up the embankment on one side and down on the other, which pedestrians used day and night; in *McDermott* v. *New York Cent. R. R. Co.* (*supra*), there was testimony that 50 cars a day used the crossing; in *Meaney* v. *Long Is. R. R. Co.* (*supra*) on which plaintiff heavily relies, the photographs in the record show a clearly defined and wide path on either side of the tracks.

In the instant case, the extent and regularity of use was not clearly established. While there was testimony that the " short cut " had been used for three or four years prior to plaintiff's injury by adults and children, and one police officer testified that he had seen thousands of persons crossing, the latter witness admitted that his " thousands " was a figure of speech, and another police officer witness testified that there was trouble with school children crossing each September until a few of them had been reprimanded, leaving the implication that the practice stopped each year after such reprimands. But if the generality and continuity of use be decided in plaintiff's favor, there is still a fatal gap necessitating the finding that plaintiff was in fact a trespasser rather than a licensee:—the evidence does not establish a passageway so notorious, so open and visible, that defendant can fairly be charged with notice of it.

Mitchell spur at the point where plaintiff was injured consists of two sets of tracks running east and west, roughly parallel to and approximately 120 feet north of Commercial Avenue in Garden City. Two warehouse buildings facing on Commercial Avenue stand about 75 feet apart, and between them is a hardpan dirt area running back from Commercial Avenue to defendant's right of way. From the hardpan to the southerly set of tracks defendant's right of way slopes gently upward and at the time plaintiff was injured was a mixture of weeds and rubble. To the north of the northerly set of tracks, defendant's right of way, about 10 feet wide, slopes gently downward and is covered by gravel and weeds. To the north of the right of way and immediately opposite the hardpan between the Commercial Avenue building is a steel wire mesh fence, which runs west along the south line of the Oxford Filing Company's property for about 100 feet and then turns north across that property. West of the end of the fence and north of defendant's right of way is the parking lot of Oxford Filing Company, through whose property anyone using the short cut would have to walk about 400 feet to the corner of Stewart and Clinton Avenues. Plaintiff

adduced evidence that a wide path led up to the tracks on the south side and it was the same on the north side, a dirt worn path, yet none of the pictures which include the south side of the tracks some of which were taken with the camera lens facing directly toward the southernmost track through the hardpan opening give any evidence of a worn or beaten down area. While some weeds had grown between the ties of the two sets of tracks, the weeds were so spread out that no worn or beaten area through them could be discerned. As for the north side of the tracks, plaintiff's sister marked Exhibit 3 showing the course of the path to be substantially to the west of the end of Oxford Filing Company's fence; Patrolman Pontolillo testified that there were two such paths, one of which was included within the area of Exhibit 3, which he marked on Exhibit 3 even further to the west than had plaintiff's sister; Deborah Kehoe marked on Exhibit E an area near the end of the fence, and Patrolman McAleer shown Exhibit E with her marking on it confirmed that as the location of the path but admitted that the area appeared to be grown up with weeds both east and west of the marking. Common sense prevents acceptance of the testimony of plaintiff's sister and Patrolman Pontolillo on this score; a short cut angled diagonally to the west would come down on the north side of the tracks as close to the west end of the fence as possible, human nature being what it is. Exhibits 5 and A show the south side of the area marked by Deborah Kehoe and indicate that if there was a path in that area it ran through only the northernmost half of the right of way north of the tracks, for the southernmost half of the right of way in that area appears to be mostly gravel. Bearing in mind the facts that the short cut crossed a little-used spur, rather than a busy freight yard as in the *Coger* case; that the tracks were substantial distances back from public streets; that the path ran from private property to private property, rather than from highway to highway, as in the *Zambardi* case; that such path, if any, as existed on the north side was discernible for only about five feet, and that most of the trains that used the spur traversed it at night, the court concludes that the short cut was not so open, notorious and visible that defendant can fairly be charged with notice of it. Absent such notice and the permission impliedly resulting from it, plaintiff was a trespasser, not a licensee.

Plaintiff's second contention, that even though she be a trespasser, defendant as the operator of a high–voltage third rail owed her a duty to warn, is predicated upon *Morrison* v. *New York Tel. Co.* (277 N. Y. 444). The question appears concluded

520

by *Keeler* v. *Long Is. R. R. Co.* (299 N. Y. 621); *Donnelly* v. *Long Is. R. R. Co.* (252 App. Div. 857) and *Lederman* v. *New York City Tr. Auth.* (36 Misc 2d 571, affd. 21 A D 2d 751), each of which involved injury or death resulting from contact with a live third rail, and in each of which it was held as a matter of law that a trespasser could not recover. Indeed, the very arguments now advanced, that the railroad should be cast in damages because the third rail was not adequately covered and was kept constantly electrified although the track was used only by an occasional freight train, were made in the *Keeler* case and were the basis of the dissenters' conclusion that a question for the jury had been made out. Moreover, on the facts of the instant case the court does not find the reckless disregard which must be found if defendant is to be held liable to a trespasser (see *Brzostowski* v. *Coca-Cola Co.*, 16 A D 2d 196), for the facts are that defendant's tracks are elevated approximately three feet above the hardpan area so that the third rail is readily visible to anyone approaching the tracks, and that the top of the third rail is covered by boarding which, judging from the photographs in evidence, is about six inches wide and is suspended about four inches above the third rail on goose-neck braces which rise from the ground on the south side of the third rail. Plaintiff is unable to say how she came in contact with the third rail or what caused her to fall; her sister testified that she did not see her fall, but found her draped over the third rail after she had fallen. It seems clear that with respect to someone approaching the third rail from the south as did plaintiff, the covering of the third rail was adequate to protect against reasonably foreseeable occurrences. Neither on the law nor on the facts, therefore, can plaintiff as a trespasser hold defendant responsible for her injuries.

The foregoing constitutes the decision of the court pursuant to CPLR 4213 (subd. [b]), and all motions on which decision was reserved are decided accordingly. The Clerk is directed to enter judgment for defendant dismissing the complaint.